# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**GEORGE W. ROBINSON, JR. AND
DEMETRA PARSONS ROBINSON**

**CIVIL ACTION**

**NO. 13-CV-375-SDD-RLB**

**VERSUS**

**CITY OF BATON ROUGE AND THE
PARISH OF EAST BATON ROUGE, ET AL.**

## MEMORANDUM IN OPPOSITION
## TO MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Plaintiffs, George W. Robinson, Jr. and Demetra Parsons Robinson ("Plaintiffs"), respectfully file this opposition to the motion for summary judgment filed by defendants City of Baton Rouge/Parish of East Baton Rouge ("EBR") and the Planning and Zoning Commission for the City of Baton Rouge/East Baton Rouge Parish (the "PC") ("Defendants").

## I.      BACKGROUND

Plaintiffs are developers of real estate who have significant experience developing residential subdivisions in the Baton Rouge area.[1] Plaintiffs purchased a roughly 101-acre tract of land and sought to develop approximately 56 acres of it ("the Property") into a single-family home residential subdivision (the "Mallard Trails Project").[2] The Property's zoning permitted light residential development like the proposed subdivision.[3] Plaintiffs sought ***preliminary*** plat plan approval from the PC, as required by EBR's Unified Development Code ("UDC").[4]

---

[1] Exhibit "G" (Affidavit of George Robinson), at ¶¶3-4.
[2] Exhibit "G," at ¶¶7-8; *see also* Exhibit "F" (Deposition of David Lakvold), 5-9, 69 & exhs. 1, 2.
[3] Exhibit "A" (excerpts of EBR's Unified Development Code); Exhibit "C" (Deposition of John Price), at 30-31; Exhibit "D" (Deposition of Steven Perret), at 17, 20; Exhibit "E" (Deposition of Laurie Marien), at 24; Exhibit "F," exh. 2, at 37; Exhibit "G," at ¶9.
[4] Exhibit "G," at ¶7; Doc. No. 62-2, at 2. A preliminary plat plan only sets forth a graphic presentation of the intended development to allow the PC to determine if the development meets all the requirements of the UDC; it is

Plaintiffs met all requirements imposed upon them by the UDC and the PC, and the preliminary plat was approved by both the EBR Department of Public Works ("DPW") and the PC staff.[5]

On January 22, 2013 the PC held a hearing to determine if the preliminary plat should be approved.[6] Local residents appeared and expressed their concern about how a new development might impact traffic, flooding, and drainage in the area.[7] No technical data or expert analysis was presented adverse to Plaintiffs' application.[8] The PC initially deferred consideration of the plat (once at the applicants' request and twice at the PC's request), but subsequently voted to deny Plaintiffs permission to develop the proposed subdivision.[9]

The PC's refusal to permit the Mallard Trails Project to proceed constrained the use of right which Plaintiffs enjoyed on the Property.[10] Had the Mallard Trails Project been allowed to proceed, Plaintiffs would have earned a **net** profit of $1.3 million **above and beyond the value of the vacant land**, *i.e.*, net profit from the sale of residential lots.[11] Instead, Plaintiffs were forced to sell off, at a **gross** profit of roughly $1 million, portions of the Property as vacant and undeveloped tracts.[12]

---

only the first in a series of approvals which are required before a subdivision can be developed. Exhibit "A" (Sections 4.102, 4.3); *see also* Exhibit "E," 9, 12-13.

[5] Exhibit "C," at 31-32, 56-58, 71; Exhibit "D," at 18-19, 42-43; Exhibit "E," at 29-31, 43; Exhibit "F," exh. 2, at 3; Exhibit "G," at ¶14. Under the UDC, DPW is the agency responsible for determining whether a preliminary plat sufficiently addresses drainage concerns, and a developer is further directed to confer with the PC staff to address valid drainage or flood concerns. Exhibit "A" (Section 4.103(A)); *see also* Exhibit "D," at 15.

[6] Exhibit "G," at Paragraph 15; Defendants' Exhibit "I;" Doc. No. 62-2, at 3.

[7] Defendants' Exhibit "I," at 16-37.

[8] Exhibit "I;" *see* Exhibit "C," at 39-46, 49-51, 61, 65; Exhibit "D," at 23-25, 31, 38-40, 42; Exhibit "E," at 33-34, 36-39, 50-52; Exhibit "G," at ¶16.

[9] Exhibit "F," exh. 2, at 1-3; Exhibit "G," at ¶18; Doc. No. 62-2, at 7.

[10] Exhibit "F," exh. 2, at 3-4, 15, 93-94; Exhibit "G," at ¶19.

[11] Exhibit "F," exh. 2, at 1-6, 93-94; Exhibit "G," at ¶20;

[12] Exhibit "F," exh. 2, at 1-6, 93-94; Exhibit "G," at ¶21. Defendants choose to characterize the revenues received from the sales as "profit;" however their evidence, consisting of sale documents, shows only "gross profit," *i.e.*, all proceeds obtained by the sales of the property, not "net profit," the net of the sales price minus cost and expenses. *See* Doc. No. 62-1, at 2, 7. In any case, Plaintiffs' evidence addresses "net profits" above and beyond any value which the undeveloped land enjoyed.

- 2 -

## II.    ARGUMENT AND AUTHORITIES

### A.    Summary Judgment Standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. If the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor. A party must support its summary judgment position by citing to particular parts of materials in the record or showing that the materials cited do not establish the absence or presence of a genuine dispute.

If the mover bears his burden of showing that there is no genuine issue of fact, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. The non-mover's burden is not satisfied by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Further: In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable fact-finder drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.[13]

### B.    Disputed Issues of Material Fact Preclude Summary Judgment on Plaintiffs' Takings Claim

#### 1.    Defendants Have Waived Any Challenge that the Takings Claim is Unripe

Defendants contend at the threshold that Plaintiffs' federal takings claim must be dismissed as unripe because, under *Williamson County Regional Planning Comm'n v. Hamilton Bank*,[14] Plaintiffs must first seek compensation via the procedures that the state has established before it can assert a takings claim in federal court.[15] The *Williamson County* ripeness requirement is prudential, not jurisdictional, and thus may be waived.[16] Moreover, the

---

[13] *National Roofers Union v. Ascension Sheet Metal*, LLC, 2015 WL 3952198, * 6-7 (M.D. La. June 29, 2015) (quotation marks, brackets, ellipses, and citations omitted).
[14] 473 U.S. 172, 193-94, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985).
[15] Doc. No. 62-1, at 4-7.
[16] *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 130 S.Ct. 2592, 2610, 177 L.Ed.2d 184 (2010); *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, (5th Cir. 2011).

PD.19704972.1

*Williamson County* ripeness requirement does not apply to actions brought in state court, since a state court may hear "simultaneously a plaintiff's request for compensation under state law and the claim that, in the alternative, the denial of compensation would violate the Fifth Amendment of the Federal Constitution."[17]  This is precisely the avenue which Plaintiffs pursued when they filed their petition in state court asserting both an inverse condemnation claim (the recognized Louisiana remedy for an unconstitutional taking) and a federal takings claim.[18]

Thus, Plaintiffs' petition, as originally filed in state court, contained a takings claim which was indisputably ripe.  The subsequent removal of the case did not magically render that claim "unripe;" rather, by removing the case to a federal forum, Defendants waived any challenge that might have existed under *Williamson County* to the ripeness of the federal claim.[19]  As courts have recognized, Defendants cannot remove to federal court and then (years later no less) use their removal as grounds for a ripeness argument.[20]

## 2.    Plaintiffs Can Present Facts Sufficient for a Jury to Conclude a Compensable Regulatory Taking Has Occurred

### a.    Defendants Have Failed to Meet Their Summary Judgment Burden as to Plaintiffs' Categorical Taking Claim

---

[17] *San Remo Hotel, L.P. v. City & Cnty. of San Francisco, Cal.*, 545 U.S. 323, 346, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005).

[18] *Bienville Quarters, LLC v. East Feliciana Parish Police Jury*, 2010 WL 2653317, *2 (M.D. La. June 25, 2010) (discussing inverse condemnation claim as proper state remedy for unconstitutional taking).  Defendants assert that Plaintiffs could have pursued the mechanisms for the review of "agency" action provided for by La. R.S. 49:964. Doc. No. 62-1, at 4-5.  Defendants neglect that this provision does <u>not</u> apply to the decisions of local governmental bodies like the PC.  La. R.S. 9:951(2); *Brossette v. Alcoholic Beverage Control Bd.*, 1994-0781 (La.App. 1 Cir. 5/5/95), 655 So.2d 536, 538, *writ denied*, 1995-1349 (La. 9/1/95), 658 So.2d 1264.  Plaintiffs pursued the correct procedural course by instituting the present suit.

[19] *Sansotta v. Town of Nags Head*, 724 F.3d 533, 545-47 (4th Cir. 2013); *see Key Outdoor Inc. v. City of Galesburg, Ill.*, 327 F.3d 549, 550 (7th Cir. 2003) ("When the City removed the suit to federal court, and frustrated plaintiffs' effort to invoke state remedies, it logically either surrendered the benefit of *Williamson* or consented in advance to the remand of state-law theories, so that the process required by *Williamson* could run its course. Yet Galesburg has steadfastly resisted a remand.").  Defendants cite several cases for the proposition that the "subject matter jurisdiction aspect of ripeness" cannot be waived (Doc. No. 62-1, at 6), but these cases were decided prior to recent Supreme Court holdings that the *Williamson County* ripeness requirement is purely prudential, *not* jurisdictional. *Rosedale Missionary*, 641 F.3d at 89 (recognizing that "our holding in [prior cases] that *Williamson County* ripeness is an unwaivable jurisdictional requirement is no longer good law.").

[20] Of course, were similarly situated plaintiffs forced to litigate through the state court system and only then pursue a claim in federal court, governmental defendants would likely raise collateral estoppel issues.

In the ruling denying Defendants' Motion to Dismiss, the Court specifically noted that Plaintiffs had asserted a claim that the PC's action deprived Plaintiffs of "all economically beneficial use" of the Property, thus stating a *per se* or "categorical" taking claim under *Lucas v. South Carolina Coastal Council*.[21]  Defendants attempt to assume this claim out of existence.[22] The failure to challenge it means that it survives Defendants' motion, however.[23]

Even if Defendants had challenged this claim, their challenge would lack merit.  The holding of *Lucas* was that "when the owner of real property has been called upon to sacrifice all economically beneficial uses in the name of the common good, that is, ***to leave his property economically idle***, he has suffered a taking."[24]  Thus, "regulations that leave the owner of land without economically beneficial or productive options for its use—***typically, as here, by requiring land to be left substantially in its natural state***—carry with them a heightened risk that private property is being pressed into some form of public service under the guise of mitigating serious public harm."[25]  "As *Lucas* elaborates, categorical assessment of an alleged taking is appropriate when the property is purportedly without ***economically viable use***, and does not require the parcel to be without all accounting or appraisal value.  Both in its holding and its reasoning, *Lucas* thus focuses on whether a regulation permits economically viable use of the property, not whether the property retains some value on paper."[26]

---

[21] 505 U.S. 1003, 12 S.Ct. 2886, 120 L.Ed.2d 798 (1992); *see* Doc. No. 36, at 14.
[22] Doc. No. 62-1, at 7.
[23] *Baker v. Metropolitan Life Ins. Co.*, 364 F.3d 624, 632 (5th Cir. 2004) (summary judgment cannot be granted on claims not challenged in the summary judgment motion).
[24] 505 U.S. at 1010, 12 S.Ct. at 2895 (emphasis supplied).
[25] 505 U.S. at 1010, 12 S.Ct. at 2894-95 (emphasis supplied).
[26] *Resource Investments, Inc. v. United States*, 85 Fed. Cl. 447, 486 (2009) (footnotes omitted).

Defendants have submitted no evidence suggesting what other "economically viable **use**" Plaintiffs might have been able to make of the Property after the PC's action.[27]  Rather, they have presented only evidence of subsequent sales of the property.  "[F]ocusing solely on property values confuses the economically viable use inquiry with the diminution of value inquiry normally applied only where no categorical taking exists."[28]  In this case, following the PC's action Plaintiffs (like the plaintiff in *Lucas*) remained owners of their property and were free to sell it; what they were not free to do was **use** it in any economically beneficial way that can be discerned from the record.  Plaintiffs' claim of a categorical taking under *Lucas* remains.

### b. Defendants Have Failed to Meet Their Summary Judgment Burden as to Plaintiffs' "As Applied" Takings Claim

"[D]ue to the 'fact-intensive' nature of takings claims, courts are typically reluctant to decide such claims at the summary judgment stage, preferring to wait for a trial to fully develop the factual record."[29]  While Defendants recite the factors for an "as applied" taking set forth in *Penn Cent. Transp. Co. v. City of New York*,[30] they cite no authority indicating that on the facts of record a reasonable jury, applying the multifactor balancing test of *Penn Central*, could not find in Plaintiffs' favor.  Thus, Defendants' have failed to meet their summary judgment burden.

Furthermore, the evidence of record shows that a reasonable jury would likely find in Plaintiffs' favor. The primary *Penn Central* factor (often stated as two separate factors) is "the economic impact of the regulation on the claimant, and, particularly, the extent to which the

---

[27] As previously noted, the Here, the UDC's owning zoning provisions recite that "the purpose of the Rural district is to permit Low-Density Residential development." But this is the precise development that the PC denied.

[28] *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1433 (9 Cir. 1996).

[29] *Resource Investments, Inc. v. United States*, 85 Fed. Cl. at 466 (listing cases); *see Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional*, 535 U.S. 302, 323, 122 S.C. 1465, 1479, 152 L.Ed.2d 517 (2002) (observing that *Penn Central* inquiry "necessarily entails complex factual assessments of the purposes and economic effects of government actions.").

[30] 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

- 6 -

regulation has interfered with distinct investment-backed expectations."[31]  The economic effect on the claimant can be measured in different ways, including changes in the market value of the property,[32] whether the regulation makes the claimant's business venture "commercially impracticable,"[33] the value of the other remaining economically viable "uses" of the Property,[34] and whether the regulation limits the owner's ability to obtain a "reasonable return on its investment."[35]  As this suggests, the pertinent inquiry involves "an analysis of the effect the [Defendants'] application of the zoning ordinance and subdivision regulations had on the value of [Defendants'] property and investment-backed profit expectations."[36]

Defendants posit that while the PC's action deprived Plaintiffs of the right to develop the Property, eliminated its highest and best use, and deprived Plaintiffs of roughly $1.3 million in profit, there was no economic impact on Plaintiffs because they were ultimately able to obtain some gross profit by sale of the undeveloped land.  However, Defendants make no attempt to show how the regulation impacted the value of the Property, *i.e.*, what the Property might have sold for before the PC foreclosed the highest and best use of that Property.  Only Plaintiffs have submitted evidence concerning the "before and after" effect of the PC's action on its property and investment-backed profit expectations.[37]  Defendants' evidence, on the other hand, demonstrates only the unremarkable proposition that immovable property in the Baton Rouge

---

[31] *Penn Central*, 438 U.S. at 124-25, 98 S.Ct. 2646.  "The economic impact of the government's regulatory action is mainly a factual question."  *Rose Acre Farms, Inc. v. U.S.*, 559 F.3d 1260, 1267 (Fed. Cir. 2009) (citation omitted).
[32] *Hodel v. Irving*, 481 U.S. 704, 714, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987).
[33] *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495-96, 107 S.Ct. 1232, 1247-48, 94 L.Ed.2d 472 (1987).
[34] *Andrus v. Allard*, 444 U.S. 51, 66, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979)
[35] *Penn Central,* 438 U.S. at 136, 98 S.Ct. at 2665 (internal quotation marks omitted).
[36] *Williamson County*, 473 U.S. at 200, 105 S.Ct. at 1323.
[37] *See* Exhibit "F," exh. 2; Exhibit "G," at ¶¶7-9, 19-21.

area tends to appreciate over time.[38]   Plaintiffs could have sold the Property, vacant and

undeveloped, at any time; it was the fact they were prevented from using their Property as

permitted by law, *i.e.*, developing the Property into the low-density subdivision Defendants' own

zoning ordinance expressly contemplated, that is the basis of Plaintiffs' complaint.[39]

In regard to the "reasonableness" aspect of the "reasonable investment-backed

expectations" inquiry, the law requires "an objective, but fact-specific inquiry into what, under

all the circumstances, [Plaintiffs] should have anticipated."[40]   Defendants do not dispute that

Plaintiffs owned the Property for investment purposes, nor do they dispute that it was reasonable

for Plaintiffs to expect to reap an additional $1.3 million in profit if allowed to develop the

Property into a residential subdivision; rather, their sole contention is that, because the

development required the approval of the PC under state and local law, it was not reasonable for

Plaintiffs to have any expectation that the development might proceed.[41]

Contrary to Defendants' unsupported contention, "[t]he existence of a regulatory regime

does not *per se* preclude all investment-backed expectations for development."[42] Rather, "it helps

to shape the reasonableness of those expectations."[43]  Furthermore, this "reasonable expectation"

standard does not require "certainty," but rather "implies reasonable probability, like expecting

rent to be paid."[44]  In short, Plaintiffs must show only that, under the circumstances of the case,

and considering "[t]he nature and extent of permitted development under the regulatory regime

---

[38] Indeed, if Defendants contention is accepted, the *Penn Central* line of cases would be rendered practically meaningless, since in every "regulatory taking" case the owner is left with title to his property and can sell it on the open market, including for a profit if (as is the case in most jurisdictions) the property appreciates over time.
[39] Under Penn Central "a diminution in value, standing alone," *Jackson Court Condominiums, Inc. v. City of New Orleans,* 874 F.2d 1070, 1080 (5th Cir. 1989) (*citing Penn Central*) (emphasis supplied), does not establish a Taking.  But Defendants' proposition, that the loss of future profits from the ability to develop their land had no perceptible economic impact on Plaintiffs because they could still earn $1 million (by virtue of appreciation) by selling the land undeveloped, is altogether wrong.
[40] *Cienega Gardens v. United States,* 331 F.3d 1319, 1346 (Fed. Cir. 2003).
[41] Doc. No. 62-1, at 9-10.
[42] *Palm Beach Isles Associates v. United States,* 231 F.3d 1354, 1364 (Fed. Cir. 2002).
[43] *Palazzolo v. Rhode Island,* 533 U.S. 606, 633, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001).
[44] *Rancho de Calistoga v. City of Calistoga,* 800 F.3d 1083, 1090 (9th Cir. 2015) (citation omitted).

- 8 -

vis-a-vis the development sought by the claimant,"[45] a reasonable person would have considered it probable that the Mallard Trails Project would be approved by the PC.[46]

The record before the Court shows that all applicable zoning and UDC requirements were met by Plaintiffs. Plaintiffs' intended use of the land was thus "presumptively valid" and "there was at least a 'very strong likelihood' that Plaintiffs' application would be approved."[47] Defendants make no attempt to challenge this prior finding. The record thus confirms that the PC's action clearly interfered with Plaintiffs' reasonable investment-backed expectations.

As to the other factor referenced in *Penn Central*, *i.e.*, the "character of the governmental action," Defendants posit only that because this case involves a regulatory taking, "there is no governmental intrusion whatsoever."[48] To the extent Defendants employ the word "intrusion" to mean "physical invasion," they say nothing, since a physical invasion results in a categorical taking and no *Penn Central* analysis is required. To the extent they employ the word "intrusion"

---

[45] *Resource Investments, Inc. v. United States*, 85 Fed. Cl. at 515 (internal quotation marks, brackets, and citations omitted).

[46] Exhibit "F," exh. 2, at 3 ("Since the development plan complied with the [UDC], the owner/developer had a reasonable expectation the intended use would be approved and would enjoy the economic benefits of selling 90-homes."); *see Acorn Land, LLC v. Baltimore County, MD*, 402 Fed.Appx. 809, 817 (4th Cir. Sept. 21, 2010) ("Acorn met the objective criteria for amending its water/sewer classification and that the Council arbitrarily and capriciously blocked Acorn's petition . . . . [W]e find that Acorn has plausibly pled that it had a reasonable investment-backed expectation to residentially develop its property with public water/sewer access. Moreover, we find that Acorn plausibly pled that the Council interfered with this reasonable expectation when it rezoned Acorn's property and denied Acorn's property the public water/sewer access necessary for such development."); *Cienega Gardens*, 331 F.3d at 1353 ("The trial court thus erred in accepting the government's assertion that no expectation of the continuation of the prepayment term in a housing program participant's mortgage contract could be reasonable in light of the applicable regulation. Knowledge of the Government's role in their chosen business venture, we hold, is not enough to destroy the reasonableness of the expectation of this right to prepay that was expressly granted both by contract and by regulation when the Owners entered the programs.") (internal quotation marks, brackets, and citation omitted); *Sansotta v. Town of Nags Head*, 97 F.Supp.3d 713, ( E.D.N.C. 2014) ("To be sure, the Owners have been on notice that the beach in front of the Cottages is eroding and may eventually erode to the point that the Cottages can no longer legally or practically be repaired. Nonetheless, the Owners rightly expected that the Town would not attempt to accelerate that process through its unauthorized assertion of the public trust doctrine."); *Resource Investments, Inc. v. United States*, 85 Fed. Cl. at 466 ("However, plaintiffs' investments were reasonable, because plaintiffs had no reason to believe that they would not be able to procure all of the necessary permits, given the pressing need for a new landfill and their familiarity with waste disposal in Pierce County.").

[47] Doc. No. 36, at 25-27, *citing Urban Housing of America, Inc., et al. v. City of Shreveport, et al.*, 44,874 (La. App. 2nd Cir. 10/28/09), 26 So.3d 226, 231 (*citing D'Argent Properties, LLC v. City of Shreveport*, 44,457 (La. App. 2 Cir. 6/24/09), 15 So.3d 334, 340, *writ denied*, 2009-1726 (La. 11/6/09), 21 So.3d 308); *see also* Exhibit "F," exh. 2, at 3, 6.

[48] Doc. No. 62-1, at 10.

in some non-physical sense, their submission is refuted by the record, which shows that the PC's action deprived Plaintiffs of a use of right protected by Louisiana law. As the Supreme Court has observed, while the "character of the governmental action" factor is usually neutral, in instances where a regulatory decree destroys "one of the most essential sticks in the bundle of rights that are commonly characterized as property," this factor alone may militate in favor of a finding that a compensable taking has occurred.[49] Depending upon how the Court chooses to address Plaintiffs' use of right, this factor is either neutral or cuts in favor of a taking.

In sum, a review of the *Penn Central* factors on the existing record does not suggest that no reasonable juror could find in favor of Plaintiffs. To the contrary, the evidence of record strongly suggests that a reasonable jury would find in Plaintiffs' favor.

**C.    Defendants Fail to Present Any Evidence that They are Entitled to Judgment as a Matter of Law on Plaintiffs' Substantive Due Process Claim**

This Court has previously held that Louisiana law limits the ability of the PC to deny a use of right like that which Plaintiffs requested, such that a decision would, if based upon no data other than public opposition, be "arbitrary and capricious" (and thus offend substantive due process).[50] Notably, one of the commissioners who voted to deny the project agrees:

> Q.    So if there were neighbors who said the traffic was too bad or there were drainage issues, would that be enough of a reason for you to vote no on this project.
>
> A.    ***No. There would have to be some kind of substantiating evidence or something. I mean, people get up there and say all kinds of stuff.***[51]

Defendants cite to no "substantiating evidence."[52] Rather, they cite *only* (1) statements made by the public at the hearing, and (2) the subjective "concerns" expressed by the PC about

---

[49] *Hodel v. Irving*, 481 U.S. 704, 716, 107 S.Ct. 2076, 2083,, 695 L.Ed.2d 668 (1987).
[50] Doc. No. 36, at 20-22.
[51] Exhibit "E," at 40 (emphasis supplied). This same commissioner is unable to recall any such "substantiating evidence" which supports her decision. *Id.*, at 40-47.
[52] Doc. No. 62-1, at 13.

flooding, drainage, and traffic in the vicinity of the Mallard Trails Project.[53]  Moreover, the

testimony of the PC commissioners who voted to deny the application establishes that the only

factual basis for their subjective beliefs was public opposition, and that they were aware of no

technical or expert analysis or other objective data that supported their decision.[54]  The record

also reflects that these general "concerns" did not stop Defendants from subsequently approving

other subdivisions in the vicinity of the Mallard Trails Project.[55]

Defendants' apparent contention is that superficially well-meaning concerns about

legitimate issues, even if based upon nothing more than personal opinion and public opposition,

and even though not applied consistently to all projects considered by Defendants, is enough to

justify Defendants' action.[56]  This contention must fail given the contrary legal conclusion of this

Court that the PC was permitted to make decisions based only upon "data presented to" the PC,

and that such "data" could not consist solely of public opposition.[57]  However, the only "data"

that Defendants have pointed to as supporting their decision, which was "presented to" the PC,

are the statements of lay opponents of the Mallard Trails Project.

Defendants have put forward no reasonable construction of the law that vested in

---

[53] Doc. No. 62-1, at 14-15.
[54] Exhibit "C," at 39-46, 49-51, 61, 65; Exhibit "D," at 23-25, 31, 38-40, 42; Exhibit "E," at 33-34, 36-39, 50-52. Although the DPW and PC staff were available at all times to provide further information regarding any "concerns" the PC itself might have had, there is no evidence the PC made any further inquiry to DPW or its own staff before voting to deny Plaintiffs' application.  *See* Exhibit "C," at 19-20, 24-25, 28-29, 38, 59-61.
[55] Exhibit "C," at 70-71; Exhibit "D," at 36-37.
[56] If the PC enjoyed unfettered legislative discretion, Defendants would at least have a colorable argument that this should be the standard.  However, for purposes of due process challenges the federal courts consider such decisions to be "adjudicative."  *Bush v. City of Gulfport, Miss.*, 454 Fed.Appx. 270, 276 (5th Cir. Nov. 15, 2014); *see Dolan v. City of Tigard*, 512 U.S. 374, 385, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) (contrasting "[t]he sort of land use regulations" that "involved essentially legislative determinations classifying entire areas of the city," with a city's "adjudicative decision to condition petitioner's application for a building permit on an individual parcel").  "Under the adjudicative model, actions by state officials are tested by historical facts and 'adequate evidence found within a defined record."  *Bush*, 454 Fed.Appx. at 276 (internal quotation marks and citation omitted).
[57] Doc. No. 36, at 23; *see* La. R.S. 33:101.3; *Christopher Estates, Inc. v. Parish of East Baton Rouge*, 413 So.2d 1333, 1340 (La. App. 1 Cir. 1982) (planning commission's refusal to approve subdivision plat, which was based upon community outcry, the subjective beliefs of the commissioners, and the recommendation of the planning commission staff, but which was made without any expert testimony being heard, was arbitrary and capricious).

- 11 -

Defendants the broad discretion (to deny a lawful use of property based solely upon unsubstantiated supposition) they now claim. The present record does not suggest that, as a matter of law, a reasonable jury could not find in favor of Plaintiffs on this claim.

**D.    Defendants Fail to Present Any Evidence that They are Entitled to Judgment as a Matter of Law on Plaintiffs' Procedural Due Process Claim**

Defendants posit that Plaintiffs did not have a "legitimate claim of entitlement" to plat approval, because such a "claim of entitlement" requires "either a certainty or a strong likelihood that the application could have been granted."[58]    Even though it is undisputed that all requirements imposed by law on Plaintiffs were met, Defendants assert that Louisiana law does not establish such a "strong likelihood that the application could have been granted."[59]

Defendants neglect this Court's prior ruling on this very issue:

> Plaintiffs have stated that they complied with all laws, and conformed to additional demands from Defendants. Assuming this is true, and considering Louisiana's policy that land-use in these cases are presumptively valid, *there was at least a "very strong likelihood" that Plaintiffs' application would be approved.* Therefore, Plaintiffs had a legitimate claim to entitlement to approval of their preliminary plat, regardless of Defendants' discretion to grant or deny preliminary plat approval.[60]

Defendants' submission lacks merit.

**E.    Plaintiffs Can Demonstrate That the Constitutional Violations At Issue Here Resulted From a Municipal Custom or Policy**

Defendants contend that Plaintiffs cannot meet the "custom or policy" requirement for *Monell* liability.    An actionable "custom or policy" can be established "based on an isolated decision made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered."[61]    EBR has expressly

---

[58] Doc. No. 62-1, at 16.
[59] Doc. No. 62-1, at 16-17.
[60] Doc. No. 36, at 25 (citation omitted) (emphasis supplied).
[61] *Cozzo v. Tangipahoa Parish Council--President Gov't*, 279 F.3d 273, 289 (5th Cir. 2002).

vested in the PC control over the approval of subdivision plats to the extent permitted by state law.[62]  Moreover, state law vests in the PC exclusive authority over the regulation, and approval, of subdivision plats.[63]  The PC is clearly the pertinent policymaker in regards to the actions at issue in this case, actions which (as previously discussed) violate federal law.[64]  Accordingly, Defendants' submission must be rejected.

## F.   Disputed Issues of Material Fact Preclude Summary Judgment on Plaintiffs' Pendent State Law Claims

Defendants contend that Plaintiffs' inverse condemnation claim must be dismissed because Plaintiffs cannot prove that the PC's action either destroyed a major portion of the Property's value or eliminated the practical economic uses of the property.[65]  However, in *State Through Dept. of Transp. and Development v. Chambers Inv. Co., Inc.,*[66] the Louisiana Supreme Court established a three-pronged test for establishing when an unconstitutional regulatory taking has occurred under state law which does not consider whether a "major portion" of the property's value has been eliminated.  Following this decision, Louisiana courts have found

---

[62] Exhibit "A" (Sections 1.1, 1.2, 3.3, & 3.4 of UDC); Exhibit "B" (Sections 10.03 & 10.04); Exhibit "C", at 14-15; Exhibit "D," at 9; Exhibit "E," at 11-12.  *See Bolton v. City of Dallas, Texas*, 541 F.3d 545, 548 (5th Cir. 2008) ("Accordingly, this court's task is to identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.  This inquiry is specific to the particular action at issue, and depends on an analysis of relevant state and local law.") (internal quotation marks and citations omitted).  Defendants admit this fact in their statement of undisputed material facts.  Doc. No. 62-1, at 1.

[63] La. R.S. 33:101.1, 106, 110, 111, 112, 113, & 118.  Upon adoption of a master plan "the jurisdiction of the planning commission over plats shall be exclusive within the territory under its jurisdiction, and all statutory control over plats or subdivisions of land granted by other laws shall, in so far as in harmony with the provisions of this Sub-part, be deemed transferred to the planning commission of the parish or municipality, as the case may be." La. R.S. 33:117.  EBR adopted its current comprehensive land use plan in 2012.  Exhibit "C," at 9; Exhibit "D," at 18.

[64] *Compare Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313 (11 Cir. 2006) (planning commission was "policymaker" in regard to decision denying approval of building project) (applying Alabama law), *cert. denied*, 127 S. Ct. 559, 166 L. Ed. 2d 410 (U.S. 2006).

[65] Doc. No. 62-1, at 11.

[66] 595 So.2d 598, 599-600 (La.1992).

unconstitutional takings where governmental action deprived a landowner of the property's highest and best use, even if other economically profitable uses remained.[67]

Defendants also neglect that the pertinent "value" for purposes of the Louisiana action includes all profits that might reasonably be expected to be obtained from the property, including net profits that might reasonably flow from the sales of the developed lots.[68]   The record evidence shows that, measured in terms of their full loss, more than half the value they might have expected to reap from their Property was lost.  Defendants' challenge thus fails.

## IV.   CONCLUSION

Plaintiffs respectfully request that this Honorable Court deny Defendants' motion.

Respectfully submitted,

**PHELPS DUNBAR LLP**

/s/ Amanda W. Messa
J. Alan Harrell, Bar Roll No. 25081
Amanda W. Messa, Bar Roll No. 30108
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802-5618
Post Office Box 4412
Baton Rouge, Louisiana 70821-4412
Telephone: 225-346-0285
Telecopier: 225-381-9197
Email:  alan.harrell@phelps.com
          amanda.messa@phelps.com

ATTORNEYS FOR GEORGE W. ROBINSON,
JR. AND DEMETRA PARSONS ROBINSON

---

[67] *SDS, Inc. v. State, DOTD*, 2007-0406 (La. App. 4 Cir. 2/13/08), 978 So.2d 1013, 1015-16 (state highway department's action in eliminating ability of 18 wheeler trucks to access plaintiff's property, and therefore deprived property of its highest and best use as an industrial warehouse, held unconstitutional regulatory taking).
[68] *State, through Department of Highways v. Terrace Land Co., Inc.*, 298 So.2d 859, 863-64 (La. 1974); *Southwest La. Elec. Mem. Corp. v . Hargrave*, 432 So.2d 1147, 1149 (La. App. 3 Cir. 1983); *State, DOTD v. Exxon Corp.*, 430 So.2d 1191, 1195 (La. App. 1 Cir. 1983); *State of Louisiana, through Department of Highways v. LeBlanc*, 388 So.2d 412, 414 (La. App. 1 Cir. 1980).

## CERTIFICATE OF SERVICE

I do hereby certify that on July 11, 2016, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.


/s/ Amanda W. Messa

PD.19704972.1